# N. Y. SUPERIOR COURT.

## ARTHUR GILMAN agt. MARIETTA R. STEVENS.

*Architect's responsibilities — Relations of builders and architects — Answer — Testimony inadmissible to prove fraud, where fraud was not alleged — may be relevant to the plea of negligence, and so admissible.*

An architect is liable for inferiority in the material or labor put upon his building to the amount required to make a good job of it. (First class material and labor are not to be looked for unless called for in the specification.)

If, however, a builder employed by the owner fails in his work from incapacity, misconduct or intemperate habits, the architect is not liable for the consequences, unless he should wrongfully give a certificate to the builder.

Advances or loans made to the architect by the builder can be proven by the owner as bearing upon the question of negligence alleged in the answer, fraud not being claimed.

The schedule of charges of the American Institute of Architects is recognized as showing the customary and legitimate rate of compensation for an architect's services. (N. B.—It does not appear whether plaintiff was a member of that institute.)

*Trial Term, March,* 1877.

ARTHUR GILMAN, an architect, sues Mrs. Marietta R. Stevens, the defendant, for a balance of $832 upon an account for professional services in completing and building an addition to the Stevens apartment house, corner of Twenty-seventh street and Fifth avenue, New York city, the other portion of said apartment house having been constructed by another architect, Mr. R. M. Hunt. The complaint likewise claimed full compensation as upon an estimated cost of $425,000, according to the schedule of the Institute of Architects, for pro-

fessional services in and about a hotel proposed to be built by the defendant (as alleged) upon land belonging to the late Paran Stevens, the defendant's husband, at the corner of Thirty-seventh street and Fifth avenue, New York city, which last hotel was never built. The answer is a general denial, and alleges for a further defense, and as well by way of counter-claim, that the plaintiff in his professional capacity as an architect undertook and agreed to supervise the construction of the Twenty-seventh street house, and to see that the same was built of the best of material, and in a strong and substantial manner, and made suitable for its purpose, while in fact and in consequence of " negligence, and want of skill and attention " on the part of the plaintiff the said building was not constructed in a strong and substantial manner. " Every thing necessary to make the same strong and substantial was not done." " The materials used in and about the construction of the same were not of the best character, and the work and labor upon the same were not faithfully performed, and that in consequence thereof the said building is less in value by the sum of $20,000 and upwards than it should be if the plaintiff had performed his agreement and discharged his duty in the premises, by reason whereof, as the defendant is advised and believes, the plaintiff is liable to her in the sum of $20,000 and upwards, for which, by way of counter-claim, she asks judgment against him in this action, with interest."

The defendant's testimony was to the effect that she merely considered a proposal to build a hotel at Thirty-seventh street and never decided so to do, nor employed plaintiff to design such an hotel, and that the plaintiff's plans, if he made any such, were an adaptation of plans already made by plaintiff for another person, and that she estimated her damage from the ill construction of the Twenty-seventh street house at $20,000. With reference to the Twenty-seventh street house the defendant's son-in-law testified that certain arches over the store windows in the first floor were weak so that he saw the bricks bulging out above them.

No architect was called by the defendant, but two builders testified in her behalf that, in their opinion, the material used was not of the best quality and the work was inferior, and that the value of the building was very much less on account of those facts. On the part of the plaintiff five builders testified to their having made offers to put the building in good condition for comparatively small sums ranging from $1,000 to $2,000, and that the need of repairs was largely due to the fact that the building was erected in winter and without the heat which defendant had agreed to furnish, and that such repairs were usually required, and various architects were called to prove the plaintiff's experience and professional standing. The specifications were put in as tending to show that first-class work and material were not contracted for on the Twenty-seventh street house, as the specifications called in some places for "2d quality pine" and for "two coat work in plastering." The plaintiff testified that the defendant ordered and insisted upon repeated changes from his plans and directions, and failed to make the payments agreed on and needed to carry on the work. As to the denial of employment upon the Thirty-seventh street hotel letters of the defendant were put in evidence in one of which she urged the plaintiff to hasten those plans, and in another of which she suggested to the proposed builder of the last hotel to "excavate under" a florist who was occupying the Thirty-seventh street land and "tumble him in" if he did not get out of his (the builder's) way. The court allowed evidence as under the before-mentioned allegations of the answer as to certain payments (referred to in the charge) which plaintiff received from the builder. The plaintiff admitted receiving certain sums of money from the builder at the time of the alleged proposition to build at Thirty-seventh street, the same builder having then not altogether completed the Twenty-seventh street house, and the plaintiff alleged that such moneys were advances and loans to enable him to employ a staff of draughtsmen upon the

Thirty-seventh street plans at the defendant's behest. The drawings and plans offered in evidence as for the contemplated hotel at Thirty-seventh street, contained no "working plans" nor "detail drawings," as to which fact there was at first a misunderstanding. The schedule above referred to is admitted in evidence and reads: "Schedule of charges adopted by the American Institute of Architects. For full professional services (including superintendence), five per cent upon the cost of the work. Partial service as follows: For preliminary studies, one per cent; for preliminary studies, general drawings and specifications, two and a-half per cent; for preliminary studies, general drawings, *details* and specifications, three and a-half per cent. For stores, three per cent upon the cost, divided in the above ratio. For works that cost less than $5,000, or for monumental and decorative work, and designs for furniture, a special rate in excess of the above. For alterations and additions, an additional charge to be made for surveys and measurements. Necessary traveling expenses to be paid by the client. The architect's payments are successively due as his work is completed, in the order of the above classifications. Until an actual estimate is received, the charges are based upon the proposed cost of the works, and the payments are received as installments of the fee, which is based upon the actual cost. Drawings, as instruments of service, are the property of the architect. By order Richard Upjohn, President, Carl Pfeifer, Secretary."

*John Townshend* and *W. G. Peckham, Jr.*, for plaintiff.

*John E. Parsons*, for defendant.

The cause was tried before Hon. H. C. VAN VORST and a jury. The judge charged the jury as follows:

VAN VORST. *J.* — The plaintiff, gentlemen, an architect, interposes in this action two distinct claims for services,

alleged to have been performed by him in his profession, for the defendant. The first is for drawing plans and specifications, making estimates and calculating quantities, in respect to building on an addition to a building on the south side of Twenty-seventh street, and the west side of Fifth avenue, and also for superintending that work.

There is no dispute but that the plaintiff rendered this specific service. In fact, it is conceded that he drew the plans and specifications, and that he supervised the work upon the addition to the apartment-house. The evidence is that for such services the customary charge is five per cent, computed upon the cost of the building. It is established that the claim for those services has all been adjusted and paid by the defendant, with the exception of a balance of about $832, which amount the plaintiff still claims to be due and owing to him for his services in respect to the addition to the apartment-house.

Now, gentlemen, by the contract under which this building was erected, the contractor, Mrs. Jones, undertook to complete the work on or before the 1st of February, 1874, and the contract, which is in writing, states that the work was to be done in a good, workmanlike and substantial manner, to the satisfaction, and under the direction, of the plaintiff, the architect, to be testified by a writing or certificate under his seal. These are significant words, gentlemen, and, doubtless, you will not lose sight of them. The duty of the plaintiff, therefore, it is quite clear, was to see to it that the building was erected, having reference now, gentlemen, to those terms that I have suggested to you as being significant. The work had to be done in accordance with the plans, elevations, sections and specifications furnished by the plaintiff, and to his satisfaction; and the payment to the contractor for the work as it progressed, which was to be paid in fifteen installments, was dependent, in each instance, upon a certificate in writing, to be obtained from the plaintiff, that the contractor was entitled to the specific payments. Of course, the giving

of those certificates contemplated that the contractor had done the work in conformity with the plans and specifications, and to the satisfaction of the plaintiff. The plaintiff then occupied an important and highly responsible position in relation to this work, both to the contractor and to the defendant. It was clearly his duty to exercise proper vigilance and skill in the supervision of this work; to see that it was done in the manner contemplated by the specifications, and in a good, workmanlike and substantial manner.

The defendant claims that the plaintiff has neglected his duty in his employment, and that through such neglect she has sustained damage; and, gentlemen, this is the subject that chiefly, I may say almost exclusively, demands your attention upon this branch of the case. Was the material used of the quality required? Was the work done in the manner contemplated by the contract — the plans and specifications? The plaintiff gave the certificates called for, and upon their faith the defendant has paid out, as is claimed by her, the cost of the structure. Fourteen of these certificates, signed by the plaintiff, have been produced in evidence; the last, the fifteenth certificate, is not produced according to my recollection of the case, although there has been, I believe, some evidence given with regard to the substance of its contents, from a memorandum that Mr. Gilman had.

Gentlemen, it was the duty of the plaintiff to exercise the skill and attention required of a person standing in the relation he did with respect to the materials to be used and the work to be done. Does the evidence show that he has been at fault in these respects? Now, that is for you to determine. Evidence has been adduced in regard to the material used and its character, and as to the manner in which the work has been done. The painting and plastering, it is claimed, are not such as is called for; that they are defective in character and execution. Gentlemen, you and I are greatly indebted to the learned gentlemen who have tried this case with signal ability on each side; and they have called your

Gilman agt. Stevens.

attention to the evidence, Mr. Parsons giving you his views, going into details with regard to the points in which he says this work has not been done according to the plans and specifications, and the learned gentlemen on the other side have given you their views of the same branch of the case. Therefore, I say, I am relieved from going into detail with regard to these specific points in which it is claimed that the work has not been done according to the plans and specifications, and I am the more reluctant, gentlemen, to enter into any statement upon that point, because I am aware that it is a part of the case, entirely and exclusively within your province, and because by mentioning one subject or omitting to mention another it might be considered that I attached an undue importance to one and did not properly appreciate the importance of another. Therefore I am disposed to leave this entire matter where it properly belongs, with you, and upon you the responsibility must rest to determine it properly and correctly.

But, gentlemen, you will determine, under the evidence, how the facts are in these regards, and if the work and material were defective, then whether such defects are in consequence of, or owing to, the negligence of the plaintiff in any regard. In determining this you will doubtless consider, and it would be your duty to consider, the obligation and the duty the plaintiff assumed and the manner in which he has met those obligations and discharged the duty, and whether the defects are of such a character as by the exercise of the ordinary skill and attention of a person of his profession and in his relation they could have been guarded against and prevented.

Now, gentlemen, for any deficiency, for any damage the defendant has sustained through the neglect of the plaintiff, if there be any neglect, in the superintending of this work and in giving the certificates upon which she has made payments, the plaintiff is liable and the amount of such damage should be allowed in this action to her.

Gilman agt. Stevens. ·

The next claim of the plaintiff is for drawing plans and specifications and for other services as an architect in regard to a building proposed to be erected on the corner of Thirty-seventh street and Fifth avenue. The building was not erected and the plaintiff's claim therefor is, by himself, limited to two and a-half per cent instead of the full charge of five per cent for drawing the plans, &c., and three-quarters of one per cent for taking the quantities, in all amounting to the sum of $10,562. The plaintiff claimed that he performed these services, and that he did so upon the defendant's retainer. He has been examined himself as a witness on this subject, as has also Mr. Crooks, and it is claimed by the plaintiff's counsel that there is found in the testimony of other witnesses corroboration of the principal fact, as he claims, that plaintiff was employed by the defendant to render these specific services for which he seeks a recovery in this action growing out of the Thirty-seventh property, which was contemplated to be improved. Now, in order to sustain the plaintiff's claim for these services in respect to this Thirty-seventh street property, you are to be satisfied that he performed the work and services necessary to entitle him to the commission charged; that he performed that service which would entitle him to a commission of two and one-half per cent for drawing the plans and specifications, and three-quarters of one per cent for taking out the quantities: that he actually performed this service; that is to say, that he drew and completed the plans and estimates, and computed the quantities for a building proposed to be erected by the defendant upon the property in question. I don't suppose that the plaintiff himself would insist that for an immature plan, for an entrance upon a service of this character; that is, the drawing of plans and specifications, and the taking out of quantities, and the like of that, for an incomplete service in that regard he would be entitled to his full commission, and therefore his claim is that he has rendered all the services necessary to entitle him to the full commission. Of course,

the drawing of plans for a building would seem in reason to be a sort of unit, a complete thing; that there is every thing here from which the building might be erected from its foundation to the roof or the chimneys on the roof, every thing. I suppose that these papers, which are designated by the general term, plans and specifications, and drawings, and estimates, and all that, represent the complete building as far as it can be represented on paper. I think that would in reason be the construction to be put upon such an effort as is contemplated by the case. Now, gentlemen, I say that you are to be satisfied that the work was done in that way substantially and completely; in other words, that he has rendered all the service to entitle him to such a commission as that.

Now, as the charge made by the plaintiff is upon the basis of the contemplated cost of the building, it would seem that you should be satisfied that the arrangements between the plaintiff and defendant had progressed, advanced, to the position that the expense of the contemplated building had been substantially assumed or in judgment reached, and with respect to which the plans and estimates were made or accommodated. It would seem that the cost of the improvement is an element in arriving at the amount of compensation that the plaintiff would be entitled to, or that an architect would be entitled to, for performing these services. It must be upon the basis of the cost of the building and the completion of all the plans and specifications with regard to it. Now, if that were all that belongs to this branch of the case probably you could not have a great deal of difficulty, at any rate that your determination could be more rapidly reached were it not for some other considerations which are to be noticed. But before stating that I presume, gentlemen, that I may make a general statement to you, which will doubtless be satisfactory to your reason: That parties are entitled to be paid for such work, labor and services as they have rendered to others at their request and for their advantage. That is an ordinary rule,

good in morals as in law. Now, if this work has been performed in the manner that I have described, is there any thing in this case which relieves the defendant from paying the plaintiff's claim?

The defendant herself has been examined as a witness, and she says, among other things, that she did not own the property. But, gentlemen, the mere fact that Mrs. Stevens did not own the property is not enough to excuse her, and I do not understand her learned counsel to advance that proposition either because she might have contemplated acquiring it for the purpose of improving it, and in that way employed the plaintiff to perform the services which he claims to have rendered; and whether she ever acquired the property or not, it would be immaterial if she did employ him to render the service, and he rendered it at her request without any other condition as to payment. I say that the mere fact that she did not own the property herself, separated from every other consideration, would be no reason to relieve her from her obligation to pay for the work which had been performed, if it was performed at her request.

But the defendant claims, among other things, that she did contemplate acquiring the property and improving it, and it is within her evidence, it is within her claim at any rate, or that of her counsel, that this was substantially a conditional affair — it is her theory of the case, that it was the understanding that, for whatever services plaintiff performed in the immature condition in which the whole arrangement was, he was not to be paid; in other words, that he said it should cost her nothing. There seems to be no controversy, as I have already stated, about there being a balance due to Mr. Gilman for services upon the apartment-house. His claim, with regard to services upon the Thirty-seventh street house, is disputed entirely, and the defendant sets up a claim for damages. As I have stated before, if the defendant has sustained any damage through the plaintiff's negligence, it is proper for you, and you should set off the damage she has so

sustained against the claim on the Twenty-seventh street house; and if that is all there is of the case under the pleadings, she would be entitled to a judgment for any overplus of damages, if there is any in her favor. But if you come to the conclusion that the plaintiff is entitled to pay for his services, for the completion of the drawings, plans and specifications for the Thirty-seventh street house, then you may set off against both claims whatever damages, if any, you find she has sustained through the negligence of the plaintiff, if he has been guilty of any negligence (which I have already described to you in the other part of the case) you may set it off against that, and for any residue in his favor, if there is any, you should render him a judgment for such residue. I think, gentlemen, that is all it is necessary for me to say about that. This is a case of importance to the parties; it is important to the plaintiff; it is important to the defendant; and I cannot think that your labors will be protracted under the examination which the case has received at the hands of the intelligent counsel, to whom its care has been intrusted.

The plaintiff asks me to charge you, and I do charge you, " That an architect is only required to perform his work with ordinary care, diligence and skill. Ordinary or due skill means that degree of skill which men engaged in that peculiar art usually employ. It does not mean that high degree of skill which belongs only to a few men of extraordinary endowments and capacity."

" That the burden is upon the defendant to establish that the plaintiff did not exercise ordinary care, diligence and skill in his superintendence of the building, and that unless the jury are satisfied that the plaintiff did not exercise ordinary care, diligence and skill in such superintendence, the plaintiff is entitled to recover for his services as architect for the addition to the Stevens house, so called."

" That the mere fact that the plaintiff introduced or recommended Jones to defendant, or recommended defendant

Gilman agt. Stevens.

to employ Jones, does not make the plaintiff responsible in this action for the intemperance or other misconduct of Jones."

" That for any misfeasance of Jones in the matter of the contract, Jones himself, or Mrs. Jones, or her surety alone, is responsible."

" That the defendant, not having set up any defense of fraud or collusion between plaintiff and Jones in her answer, the jury are not to consider that as a question in the case."

With respect to that, I say that that question of absolute fraud is not involved in this action.  The question is whether plaintiff has neglected his duty as superintending architect to the defendant's injury.  If there was any collulusion between Jones and the plaintiff, it has no bearing otherwise than as it affects the manner in which the plaintiff discharged his duty to the defendant, and whether any negligence grew out of it to her injury.

" That for any delay in the completion of the contract, and for any damages arising therefrom, the plaintiff is in no case responsible.  For any damage in this regard the defendant has her remedy on the contract."  With respect to that, I say that is so, unless the delay was in some way the result of the plaintiff's negligence in superintending, and could have been avoided by the exercise of ordinary care on his part; and that if there is any liability for damages flowing from it, it would be the approximate damage flowing from such a neglect of duty.

" That if the jury are satisfied the plaintiff did not exercise ordinary care, diligence and skill in the superintendence of the addition to the Stevens house, then the defendant is entitled to such damages as were occasioned thereby, and such damages are the costs of making the work a good job according to the requirements of the contract."  That is so in regard to those particular matters.  If it be in that condition that this request contemplates, or assumes that the cost of making the work a good job according to the contract would

Gilman agt. Stevens.

be the measure of damages, and I do not understand the learned counsel for the defendant even to dissent from that, judging from the manner in which he has conducted that branch of the case, because the defendant's counsel has introduced evidence with regard to these particular points, to show what it would cost to make the premises according to the plans and specifications, or to render them in a good and workmanlike condition in the particulars referred to there.

"That there is no evidence of any loss of tenants or any loss of rent, or that the house, for all purposes for which it was intended, did not fully answer the object intended." Now, gentlemen, I do not myself remember that there is any evidence of any loss of rents. My impression is the other way, that there is no such evidence ; but it is for you, entirely, to pass upon the other question embraced in this; whether the buildings did not fully answer the object intended, that is for you to determine under the evidence.

" That as to the charge for preparing the plans respecting the Thirty-seventh street lots, if the jury believe that the defendant did authorize the preparation of said plans, the plaintiff is entitled to recover his fees for such services." This assumes that he rendered the services at her request, or for her advantage.

"That the fees for preparing such plans, if payable at all, are two and a-half per cent on the value of the contemplated building." That is correct. I suppose you desire to add the three-fourths of one per cent; you do not say any thing about that.

Mr. PECKHAM — We do not desire to.

THE COURT — I charge you that the fees, if payable at all, are two and a-half per cent upon the contemplated cost of the building. There seems to be no controversy that those are the rates that architects are entitled to recover in cases of this character.

A JUROR — I would ask if that does not cover working plans?

Gilman agt. Stevens.

THE COURT — Yes. The next one is:

"That whether the defendant did or did not own, or had or had not elected to take the Thirty-seventh street lots is not decisive of plaintiff's right to recover or of the defendant's liability to pay. If the defendant ordered the plans to be drawn it was not for the plaintiff to inquire whether or not the defendant had any interest in the ground."

"That the defendant not having paid any of the bills for extras, cannot claim any damages in respect of such extras." Whether she has paid or not for extras is not the question. If she is liable to pay that is enough.

"That from any damages to which the defendant may have shown herself to be entitled, is to be deducted the value of the extra work for which she has not paid." That I decline to charge in that form. I charge this:

"That Mrs. Stevens is chargeable with the knowledge of the standard and regular rates of architects' fees as asked for by Mr. Gilman on the Thirty-seventh street hotel, because it appears that she had been charged the same rates by Mr. Gilman in several previous jobs." So much, gentleman, for the request of the plaintiff.

Mr. PECKHAM — I ask your honor to charge, that the details technically so called, are not claimed or called for in the charge of two and a-half per cent. One per cent additional is allowed on the schedule for the technical details, which the juror calls the working drawings.

THE COURT — I charge that.

Mr. TOWNSHEND excepts to those parts of the charge where plaintiff's requests are not charged.

Defendant's counsel accepts the charge itself but excepts separately to the charge, so far as it concerns the request of the plaintiff on various subjects.

Verdict for the plaintiff $3,000.